Filed 5/28/14  In re L.P. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.P., a Person Coming Under the Juvenile Court Law. | H039748 (Santa Clara County Super. Ct. No. JD21830) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. D.N., Defendant and Appellant. | |

D.N. (mother) appeals from the dispositional orders of the juvenile court, which adjudged her daughter L.P. a dependent child of the Santa Clara Superior Court, removed her from parental physical custody, and placed her under the care, custody, and control of Santa Clara County's Department of Family and Children's Services (Department) for placement.  (See Welf. & Inst. Code, §§ 300, 361, 361.2, 395, subd. (a).)[1]  The matter had been previously transferred from Yuba County, where the jurisdictional hearing was held.

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

Mother now argues that the Yuba County juvenile court violated due process and committed reversible error by accepting her submission on the social worker's report without first advising her of the procedural due process rights attendant to the jurisdiction hearing and obtaining her personal waiver of those rights. She also maintains that the Yuba County juvenile court abused its discretion by allowing minor to determine whether or not visitation with mother took place. Mother asserts that alternatively, if we do not reverse the dispositional orders, her "time to reunify with her daughter should be extended to reflect an additional three months to make up" for the challenged visitation order.

In its initial brief, the Department conceded that error had occurred at the jurisdictional hearing and indicated that its concession rendered the visitation issue moot. We asked for supplemental briefing.

We conclude that mother was not deprived of any procedural due process protection and her submission at the jurisdictional hearing was voluntary, knowing, and intelligent under the totality of circumstances. The issue whether the challenged visitation order, issued by the Yuba County juvenile court prior to the jurisdiction hearing, constituted error is now moot and we do not reach it. We find no basis to reverse.

*I*

*Procedural History*

On March 21, 2013, a delinquency petition was filed on behalf of L.P., 15 years old, under section 300, subdivision (b), in Yuba County. It alleged that mother had engaged in physical violence against her daughter.

At the commencement of the detention hearing on March 22, 2013, the Yuba County juvenile court appointed Carroll Peiffer to represent mother. The court ordered that "[t]emporary physical placement, care and control of the child is vested with the

2

Yuba County Health and Human Services Department" and "[t]emporary legal custody shall be with the Juvenile Court." It further ordered that visitation between the parents and child would be "arranged through the social worker at the child's request."

At the continued detention hearing on March 27, 2013 in Yuba County, mother's counsel stated there was no visitation order for mother. Minor's counsel indicated that visitation with mother was arranged by the social worker at L.P.'s request. Mother's counsel said, "That's fine, Judge."

The Jurisdiction Report indicated that Yuba County Child Protective Services had received a report that L.P. was abused by mother on March 8, 2013. When the social worker spoke with minor, minor showed pictures of her injuries and refused to return home to her mother's care. Minor reported that, after returning home after "she 'ditched' school," mother hit her in the face multiple times with an open and closed hand, pulled her hair, scratched her arms and face, pushed her down, and kicked her in the back. Photographs of reported injuries, including a swollen lip, swollen black eye, and scratches on L.P.'s arms, were attached to the report.

The Jurisdiction Report stated that mother admitted that she argued with minor about minor's truancy, she tried to slap minor and "ended up scratching [minor's] arm," and minor had no injuries prior to the incident. Mother denied causing the other reported injuries. Mother reported that minor smoked marijuana and used crystal methamphetamine. Mother indicated that "she had no control over [minor] and . . . she did not want [minor] returned to her care under these conditions and without any services in place to address her daughter's issues."

At the jurisdiction hearing on April 17, 2013 in Yuba County, the parents submitted on the jurisdictional report. The Yuba County juvenile court sustained the delinquency petition, finding that the allegations were true and L.P. came within its jurisdiction under section 300, subdivision (b). Before dispersing, father's counsel asked

3

for the court to make a visitation order on behalf of father. The court ordered the social worker to "arrange a visit as requested and can be accommodated with father." Mother's counsel made no similar request.

After the jurisdiction hearing, this dependency case was transferred from Yuba County to Santa Clara County, the parents' legal residence. At the transfer-in hearing on May 13, 2013 in Santa Clara County, the juvenile court appointed counsel for mother. The court accepted the transfer of jurisdiction from Yuba County to Santa Clara County. As to visitation, the court followed the social worker's recommendations, ordering supervised visitation of two hours once a month for each parent and giving the social worker discretion to increase the frequency and duration of visits and to permit unsupervised visits and overnight visits.

Following the disposition hearing on June 7, 2013, the juvenile court adjudged minor a dependent child of the court, removed minor from parental physical custody, ordered her into the Department's care, custody, and control for out-of-home placement, and ordered reunification services. It ordered a minimum of one hour of supervised visitation per week in a therapeutic setting for mother and a minimum of two hours of supervised visitation per week for father. Mother filed a notice of appeal.

## II

### *Discussion*

A. *Mother's Submission at the Jurisdictional Hearing*

1. *California Rules of Court*

Rule 5.534(k)(1) of the California Rules of Court[2] requires a court to advise a parent in section 300 cases of the following hearing rights: "(A) Any right to assert the privilege against self-incrimination; (B) The right to confront and cross-examine the

---

[2]      All further references to rules are to the California Rules of Court.

4

persons who prepared reports or documents submitted to the court by the petitioner and the witnesses called to testify at the hearing; (C) The right to use the process of the court to bring in witnesses; and (D) The right to present evidence to the court."

Rule 5.682(b) concerning commencement of the jurisdictional hearing provides: "After giving the advisement required by rule 5.534, the court must advise the parent . . . of the following rights:  [¶]  (1) The right to a hearing by the court on the issues raised by the petition; [¶] (2) The right to assert any privilege against self-incrimination; [¶] (3) The right to confront and to cross-examine all witnesses called to testify; [¶] (4) The right to use the process of the court to compel attendance of witnesses on behalf of the parent . . . ; and [¶] (5) The right, if the child has been removed, to have the child returned to the parent . . . within two working days after a finding by the court that the child does not come within the jurisdiction of the juvenile court under section 300, unless the parent . . . and the child welfare agency agree that the child will be released on a later date."

A parent "may elect to admit the allegations of the petition, plead no contest, or submit the jurisdictional determination to the court based on the information provided to the court and waive further jurisdictional hearing."  (Rule 5.682(e).)  "If the parent . . . wishes to admit the allegations, the court must first find and state on the record that it is satisfied that the parent . . . understands the nature of the allegations and the direct consequences of the admission, and understands and waives the rights in (b)."  (Rule 5.682(c).)  "An admission by the parent . . . must be made personally by the parent . . . ."  (Rule 5.682(d).)

The Judicial Council has adopted for mandatory use form JV-190 (*Waiver of Rights--Juvenile Dependency*).  (See Judicial Council Forms, form JV-190, rule 5.504.)  This form "may be completed by the parent . . . and counsel and submitted to the court."  (Rule 5.682(e).)  The form provides for a parent's express waiver of rights, including (1) the right to a trial or hearing; (2) the right to see and hear witnesses who testify;

(3) the right to cross-examine witnesses, the social worker who prepared a report, and persons whose statements are contained in the report; (4) the right to testify in a parent's own behalf and to present evidence and witnesses; and (5) any privilege against self-incrimination in the proceeding, and for a parent's express acknowledgement of the consequences of submitting the petition on the report. (See Judicial Council Forms, form JV-190.)

"After admission, plea of no contest, or submission, the court must make" certain specified findings and note them in its order. (Rule 5.682(f).) Those findings include the following: "The parent or guardian has knowingly and intelligently waived the right to a trial on the issues by the court, the right to assert the privilege against self-incrimination, and the right to confront and to cross-examine adverse witnesses and to use the process of the court to compel the attendance of witnesses on the parent or guardian's behalf" (rule 5.682(f)(3)); "[t]he parent or guardian understands the nature of the conduct alleged in the petition and the possible consequences of an admission, plea of no contest, or submission" (rule 5.682(f)(4)); and "[t]he admission, plea of no contest, or submission by the parent or guardian is freely and voluntarily made" (rule 5.682(f)(5)).

2. *Boykin/Tahl Analogy*

Citing criminal cases, mother argues that her submission of the dependency petition for decision upon the social worker's report is the equivalent of a criminal defendant's "slow plea" of guilty, and the failure of the court to advise her of her hearing rights and obtain her waivers of those rights constituted reversible per se error. (See *People v. Wright* (1987) 43 Cal.3d 487, 493-495 (*Wright*); *Bunnel v. Superior Court* (1975) 13 Cal.3d 592, 602-603 (*Bunnel*); *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*); *Boykin v. Alabama* (1969) 395 U.S. 238, 243 [89 S.Ct. 1709] (*Boykin*))

*Boykin* recognized that, when a criminal defendant pleads guilty in a state criminal trial, the defendant waives a number of federal constitutional rights, including the

6

privilege against self-incrimination, the right to a jury trial, and the right to confront accusers. (*Boykin v. Alabama*, *supra*, 395 U.S. at p. 243.) *Boykin* made clear that courts could not "presume a waiver of these three important federal rights from a silent record." (*Ibid.*, fn. omitted.) "In the wake of *Boykin*, [the California Supreme Court] held in *In re Tahl* (1969) 1 Cal.3d 122 . . . , that 'each of the three rights mentioned—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused *prior* to acceptance of his *guilty plea*.' (*Id.* at p. 132 . . . , italics added.)" (*People v. Mosby* (2004) 33 Cal.4th 353, 359.)

The California Supreme Court extended the *Boykin-Tahl* requirements of explicit advisement and waiver of constitutional rights to the submission of a case for decision based on the preliminary hearing transcript regardless of whether the submission was tantamount to a guilty plea, i.e. a "slow plea." (See *People v. Levey* (1973) 8 Cal.3d 648, 650; *In re Mosley* (1970) 1 Cal.3d 913, 926, fn. 10; see also *People v. Wright* (1987) 43 Cal.3d 487, 491-494; *Bunnell, supra,* 13 Cal.3d at p. 605.) The Supreme Court concluded that a trial court's failure to advise and obtain waivers of any of the three fundamental constitutional rights from a criminal defendant who submits on the transcript of the preliminary hearing is "per se reversible error if the submission is tantamount to a guilty plea (*People v. Levey, supra*, 8 Cal.3d at p. 654 . . . ; *In re Mosley, supra*, 1 Cal.3d at pp. 924-926 . . . ) . . . ." (*People v. Wright* (1987) 43 Cal.3d 487, 493-494, see *id*. at p. 495.)

In *People v. Howard* (1992) 1 Cal.4th 1132, a case involving a criminal defendant's admission of a prior conviction for purposes of sentence enhancement, the California Supreme Court recognized that "the overwhelming weight of authority no longer supports the proposition that the federal Constitution requires reversal when the trial court has failed to give explicit admonitions on each of the so-called *Boykin* rights." (*Id.* at p. 1175.) The court explained: "In the 22 years since *Tahl*, our interpretation of

federal law in that opinion has not garnered significant support in the federal courts. Indeed, the high court has never read *Boykin* as requiring explicit admonitions on each of the three constitutional rights. Instead, the court has said that the standard for determining the validity of a guilty plea 'was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' (*North Carolina v. Alford* [(1970) 400 U.S. 25,] 31 . . . .) 'The new element added in *Boykin*' was not a requirement of explicit admonitions and waivers but rather 'the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.' (*Brady v. United States* [(1970) 397 U.S. 742,] 747-748, fn. 4 . . . .)" (*Id*. at p. 1177.)

The California Supreme Court stated in *Howard*: "In the exercise of our supervisory powers, we shall continue to require that trial courts expressly advise defendants on the record of their *Boykin/Tahl* rights. However, errors in the articulation and waiver of those rights shall require the plea to be set aside only if the plea fails the federal test." (*Id*. at p. 1175.) "Under that test, a plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances. (See *North Carolina v. Alford* (1971) 400 U.S. 25, 31 . . . ; *Brady v. United States* (1970) 397 U.S. 742, 747-748 . . . .)" (*Ibid*.)

The California Supreme Court observed in a subsequent case: "Although we have not directly held the *Howard* totality-of-the-circumstances test would apply on direct appeal from a guilty plea to a substantive offense, our subsequent cases seem to have assumed it. [Citations.]" (*People v. Allen* (1999) 21 Cal.4th 424, 439, fn. 4.) More recently, the California Supreme Court has stated: "By adopting in *Howard* the federal constitutional test of whether under the totality of circumstances the defendant's admission is intelligent and voluntary, we rejected the rule that 'the absence of express admonitions and waivers requires reversal regardless of prejudice.' (*Howard*, *supra*, 1

8

Cal.4th at p. 1178 . . . .)  In replacing the old rule, the focus was shifted from whether the defendant received express rights advisements, and expressly waived them, to whether the defendant's admission was intelligent and voluntary because it was given with an understanding of the rights waived."  (*People v. Mosby, supra,* 33 Cal.4th at p. 361.)

As the parties indicate, a *Boykin-Tahl* or "slow plea" analogy had been raised in dependency cases.  In *In re Monique T.* (1992) 2 Cal.App.4th 1372 (*Monique T.*), a case decided before *People v. Howard*, *supra*, 1 Cal.4th 1132, "the mother, through her counsel, waived the reading of the petition, advice of rights and explanation of the proceedings" at the detention hearing.  (*Monique T.*, *supra*, 2 Cal.App.4th at p. 1375.) "[A]t the same hearing, the mother again, through counsel, submitted the matter for a jurisdictional determination based only on the petition and the detention memorandum. The court did not advise the mother of the rights she would be giving up upon the submission."  (*Ibid.*)  On appeal, the mother relied on *Tahl* to argue that the juvenile court's failure to advise her of the rights attendant to a jurisdictional hearing as set forth in the California Rules of Court and to obtain personal waivers of those rights before she submitted the matter "void[ed] any waiver of a contested jurisdictional hearing, and require[d] the jurisdictional order to be set aside."  (*Id.* at p. 1376.)

The reviewing court stated in *Monique T., supra*:  "Among the essential ingredients of due process are the right to a trial on the issues raised by the petition, the right to confront and cross-examine witnesses, and to compel the attendance of witnesses. (*In re Malinda S.* [(1990) 51 Cal.3d 368], 383-384.)  By adopting [former] rule 1449, the Judicial Council recognized these rights are essential to a fair jurisdictional proceeding." (*Id.* at p. 1377.)  It concluded that the juvenile court had erred in accepting "a waiver of these rights based only on counsel's representations" (*ibid.*) but it found the error harmless under even under a *Chapman* standard of review (see *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824] ["before a federal constitutional error can be held

9

harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"]). (*Monique T.*, *supra*, 2 Cal.App.4th at pp.1377-1378.) The appellate court observed that, among other things, "[t]he mother was represented, at all stages of the proceeding, by an attorney, who explained her rights to her and who indicated that she desired to waive them." (*Id*. at p. 1378.)

In *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237 (*Tommy E.*), the parents submitted the jurisdictional determination on the social services report. (*Id*. at pp. 1236-1237.) On appeal, father challenged the juvenile court's jurisdictional and dispositional findings on the insufficiency of the evidence. (*Id*. at p. 1236.) The Department equated the submission to a plea of no contest and contended that "the father waived his right to contest the jurisdictional findings on appeal, because he agreed to submit the jurisdictional determination on the information provided to the court in the social services report." (*Id*. at pp. 1236-1237.) The appellate court discussed "slow pleas" in the criminal context but rejected the Department's arguments because a defendant may challenge a conviction following a "slow plea" submission on the grounds of insufficient evidence. (*Id*. at p. 1237.) In *Tommy E.*, there was no issue concerning judicial admonitions and parental waivers. Moreover, that case was decided only months after *People v. Howard*, *supra*, 1 Cal.4th 1132 was decided and before its full import was understood.

In *In re Patricia T.* (2001) 91 Cal.App.4th 400 (*Patricia T.*), mother submitted a signed and initialed waiver of rights form at the combined jurisdiction and disposition hearing and, after a very brief colloquy with mother and her counsel at the hearing, the juvenile court found that mother had knowingly and intelligently waived her rights and seemed to understand the consequences of doing so. (*Id*. at p. 405.) On appeal, mother contended that "she did not understand that her waiver of a contested dispositional hearing would result in the denial of reunification services." (*Id*. at p. 402.)

10

Citing *Monique T.*, *supra*, 2 Cal.App.4th 1372, the appellate court in *Patricia T.* stated that "because [former] rule 1449 requires warnings analogous to those required under *Boykin v. Alabama* (1969) 395 U.S. 238 [89 S.Ct. 1709, 23 L.Ed.2d 274] and *In re Tahl* (1969) 1 Cal.3d 122, when a defendant enters a guilty plea in criminal proceedings, we seek guidance from the standard of review applicable to *Boykin/Tahl* admonitions. [Citation.]" (*Id*. at p. 404.)  It recognized that " 'a [criminal defendant's guilty] plea is valid if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances.  [Citations.]' (*People v. Howard* (1992) 1 Cal.4th 1132, 1175.)" (*Id*. at pp. 404-405.)  The court concluded:  "[T]he record, taken as a totality, shows that appellant knowingly and voluntarily waived her rights, and that she fully understood that in waiving these rights it was possible that she would be denied reunification services and could lose custody of her children.  There was no error under the *Boykin/Tahl* test." (*Id*. at p. 406.)

First, mother's reliance upon the *Boykin/Tahl* analogy is misplaced because California's former rule of automatic reversal in the absence of explicit advisements has been abrogated by subsequent judicial decision.  (See *People v. Mosby*, *supra*, 33 Cal.4th at p. 361; *People v. Howard*, *supra*, 1 Cal.4th at pp. 1175-1179.)  Second, the analogy between a defendant's submission in a criminal case and a parent's submission in a dependency case is weak at best.

A parent's submission on the social worker's report at a jurisdiction hearing is not a "slow plea"[3] to a criminal offense[4] and it does not subject the parent to a penalty.

---

[3]    "A slow plea is defined as a submission of the guilt phase to the court on the basis of the preliminary hearing transcripts that is tantamount to a plea of guilty because guilt is apparent on the face of the transcripts and conviction is a foregone conclusion if no defense is offered.  (*People v. Wright* (1987) 43 Cal.3d 487, 496 . . . .)" (*People v. Sanchez* (1995) 12 Cal.4th 1, 28, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

11

"Dependency proceedings are not designed to prosecute parents. [Citations.] In a dependency proceeding, the state is empowered to intervene because a parent's inadequacy puts a child at risk." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1238.) "In the dependency context, the juvenile court intervenes to protect a child, not to punish the parent. (*In re Malinda S.* (1990) 51 Cal.3d 368, 384 . . . .) The statutory scheme is designed to permit the parent to remedy a deleterious situation and resume parental rights and responsibilities." (*Id.* at p. 1233.)

As the Supreme Court recognized in *In re James F.* (2008) 42 Cal.4th 901 (*James F.*), there are "significant differences between criminal proceedings and dependency proceedings." (*Id*. at pp. 915-916.) "Plea bargaining and other negotiated dispositions play a significant role in criminal proceedings, but not in dependency proceedings. A defendant in a criminal proceeding has a constitutional right to trial by jury (U.S. Const., 6th Amend.), but in a dependency proceeding the juvenile court makes all factual and legal determinations. The prosecution in a criminal proceeding must prove the defendant's guilt beyond a reasonable doubt; in dependency proceedings, the burden of proof is proof by clear and convincing evidence. (*Santosky v. Kramer* (1982) 455 U.S. 745, 769-770, 102 S.Ct. 1388, 71 L.Ed.2d 599.) In a criminal prosecution, the contested issues normally involve *historical* facts (what precisely occurred, and where and when), whereas in a dependency proceeding the issues normally involve evaluations of the parents' present willingness and ability to provide appropriate care for the child and the existence and suitability of alternative placements. Finally, the ultimate consideration in a dependency proceeding is the welfare of the child (see *In re Marilyn H.*, *supra*, 5

---

[4]   Even if submission on the jurisdictional report was bound to lead to a juvenile court's determination that L.P. was within its dependency jurisdiction absent any contrary evidence, mother was not exposing herself to potential criminal liability under principles of collateral estoppel. (See *In re Nathaniel P.* (1989) 211 Cal.App.3d 660, 672; see also *In re Alexis M.* (1997) 54 Cal.App.4th 848, 851, fn. 2.)

Cal.4th at p. 307 . . . ; *In re Malinda S.*, *supra*, 51 Cal.3d at p. 384 . . . .), a factor having no clear analogy in a criminal proceeding." (*Id*. at p. 915.)

We reject the notion that mother's submission upon the jurisdiction report was the constitutional equivalent of a criminal defendant's "slow plea" of guilt. We will examine, however, the separate procedural due process question whether juvenile courts must explicitly advise a parent and obtain express waivers of the due process procedural rights that are relinquished by a submission of the determination of jurisdiction on a social worker's report.

3. *Due Process*

Mother asserts that this court should find that her due process rights were violated and that the jurisdiction hearing was fundamentally unfair because she did not receive judicial advisements concerning her rights and waive them.

a. *Background*

"[T]he Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." (*Troxel v. Granville* (2000) 530 U.S. 57, 66 [120 S.Ct. 2054].) "Because a basic civil right of the parent is thus at stake (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 . . . ), significant due process safeguards have been built into the dependency scheme (*id*. at p. 307 . . . ), including a right to court-appointed counsel for a parent who cannot afford to retain counsel (Welf. & Inst. Code, § 317)." (*In re James F.*, *supra*, 42 Cal.4th at p. 904.) It is not disputed that dependency proceedings must comport with the requirements of due process.

The significant safeguards built into the current dependency scheme "include representation by counsel to assist parents at every stage of the proceedings (§ 317), notice of all hearings and rights (§§ 307.4, 308, 311, 316, 335–336, 364–366.23), clear and convincing evidence for removal from custody (§ 361, subd. (b)), reunification

13

services (§ 361.5), and review hearings at which services and progress are reviewed (§§ 366.21, 366.22)." (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307-308.)

The question here is whether, as a matter of constitutional due process, juvenile courts in dependency proceedings must advise a parent who is represented by counsel, as was mother in this case, of the parent's hearing rights and obtain the parent's express, personal waivers of those rights before the parent may validly submit the determination of jurisdiction to the court based upon a social worker's report. We begin with the observation that not all constitutional rights must be explicitly waived. (See e.g. *People v. Enraca* (2012) 53 Cal.4th 735, 762 [criminal defendant's right to testify]; *People v. Gutierrez* (2003) 29 Cal.4th 1196, 1206 [criminal defendant's right to be present at trial waived by voluntary absence during trial]; *Grafton Partners L.P. v. Superior Court* (2006) 36 Cal.4th 944, 951 [civil litigant's right to jury trial].)

b. *Procedural Due Process Protections*

"[The U.S. Supreme Court has] long recognized that a 'mere error of state law' is not a denial of due process. [Citation.] If the contrary were true, then 'every erroneous decision by a state court on state law would come [to this Court] as a federal constitutional question.' [Citations.]" (*Engle v. Isaac* (1982) 456 U.S. 107, 121, fn. 21 [102 S.Ct. 1558]; see *Swarthout v. Cooke* (2011) 131 S.Ct. 859, 863.) Due process does not safeguard the meticulous observance of state procedural prescriptions. (*Rivera v. Illinois* (2009) 556 U.S. 148, 158 [129 S.Ct. 1446] ["Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution"].) Thus, the procedural requirements established by court rules for dependency proceedings do not necessarily constitute due process protections to which a parent is entitled.

14

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State [citation]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient [citation]." (*Kentucky Dept. of Corrections v. Thompson* (1989) 490 U.S. 454, 460 [109 S.Ct. 1904]; see *Swarthout v. Cooke*, *supra*, 131 S.Ct. at p. 861.) We assume that mother has a fundamental liberty interest in the care, custody, and management of her daughter (see *Santosky v. Kramer, supra,* 455 U.S. at p. 753) protected by procedural due process. (See *Troxel v. Granville*, *supra*, 530 U.S. at p. 66.)

Fundamental fairness is the touchstone of the right to procedural due process. (*Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790 [93 S.Ct. 1756]; see *Santosky v. Kramer*, *supra*, 455 U.S. at pp. 753-754; *Lassiter v. Department of Social Services of Durham County, N.C.* (1981) 452 U.S. 18, 33 [101 S.Ct. 2153].) "A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution." (*Lassiter v. Department of Social Services of Durham County, N. C.*, *supra*, 452 U.S. at p. 33.) In deciding the constitutional sufficiency of procedures as a matter of due process, the judiciary's role is limited to determining whether the procedures afforded meet the essential standard of fairness and the specific procedures required to satisfy the minimum requirements of due process. (See *Landon v. Plasencia* (1982) 459 U.S. 21, 35 [103 S.Ct. 321].)

"In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. [Citations.]" (*Zinermon v. Burch* (1990) 494 U.S. 113, 125-126 [110 S.Ct. 975], fn. omitted.) The procedural due process demands fundamental fairness,

15

especially with respect to the fact-finding procedures.  (See *McKeiver v. Pennsylvania* (1971) 403 U.S. 528, 543 [91 S.Ct. 1976] (plur. opn. of Blackmun, J.).)  "[T]he quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.  *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)."  (*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex* (1979) 442 U.S. 1, 13 [99 S.Ct. 2100].)

"Once it is determined that due process applies, the question remains what process is due."  (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [92 S.Ct. 2593].)  "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  [Citation.]"[5]  (*Mathews v. Eldridge* (1976) 424 U.S. 319, 335 [96 S.Ct. 893].)

"At least to the extent protected by the Due Process Clause, the interest of a person subject to governmental action is in the accurate determination of the matters before the court, not in a result more favorable to him."  (*Heller v. Doe by Doe* (1993) 509 U.S. 312, 332 [113 S.Ct. 2637].)  In addition, "procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions."  (*Mathews v. Eldridge*, *supra*, 424 U.S. at p. 344.)

---

[5]    When analyzing procedural due process claims under this state's Constitution, California courts consider a fourth factor, " ' "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." ' [Citations.]" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Educ.* (2013) 57 Cal.4th 197, 213; see *In re Malinda S., supra,* 51 Cal.3d at p. 383.)

Where a dependency petition is filed on behalf of a child and the parent is represented by counsel, we assume, in absence of evidence to the contrary, that counsel is competent and advises the parent of his or her hearing rights and the potential consequences of submitting a petition for decision upon a social worker's report. (See *People v. Barrett* (2012) 54 Cal.4th 1081, 1105 ["Counsel is presumed competent and informed as to applicable constitutional and statutory law"]; *Conservatorship of John L.* (2010) 48 Cal.4th 131, 156 ["in the absence of any contrary indication, the superior court may assume that an attorney is competent and fully communicates with the proposed conservatee about the entire proceeding"]; *Strickland v. Washington* (1984) 466 U.S. 668, 689 [104 S.Ct. 2052] ["a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"].) "Like all lawyers, the court-appointed attorney is obligated to keep her client fully informed about the proceedings at hand, to advise the client of his rights, and to vigorously advocate on his behalf. [Citations.] The attorney must also refrain from any act or representation that misleads the court. (Bus. & Prof. Code, § 6068, subd. (d); Rules Prof. Conduct, rule 5-200(B).)" (*Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 151-152.)

To ensure the fundamental fairness or the accuracy or reliability of a jurisdiction hearing in a dependency case, the minimal "dictates of due process" do not additionally demand that parents who are being represented by counsel receive a judicial advisement of their due process hearing rights and expressly and personally waive those rights before submission.

c. *Voluntary, Knowing, and Intelligent Submission*

Both *Patricia T.* and *Monique T.* recognized that "the essential ingredients of due process" in dependency proceedings include the right to a contested hearing on the issues raised by the petition, the right to confront and cross-examine witnesses, and to compel the attendance of witnesses. (*Patricia T.*, *supra*, 91 Cal.App.4th at p. 404; *Monique T.*,

17

*supra*, 2 Cal.App.4th at p. 1377.) We assume that a parent's submission of the jurisdiction determination, which waives those procedural rights, must be voluntary, knowing, and intelligent to comport with due process. (See *Johnson v. Zerbst* (1938) 304 U.S. 458, 464 [58 S.Ct. 1019] ["waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" and whether there has been "an intelligent waiver" of a constitutional right depends "upon the particular facts and circumstances" of the case]; see also *Patricia T.*, *supra*, 91 Cal.App.4th at p. 406.) Our review of the record indicates that mother's submission satisfied that standard.

Before the jurisdiction hearing, mother admitted to the social worker that she had tried to slap L.P. and she had scratched L.P. She admitted that L.P. was not injured before the incident. Mother indicated she did not want minor returned to her care without services.

Before mother's submission at the jurisdictional hearing on April 17, 2013 in Yuba County, mother's counsel stated: "Your Honor, my client has no objection to the report coming into evidence. She's prepared to submit on the report. She denies the allegations as set forth in the report. But at this point in time, she's not requesting placement of the child with her. She does believe that her daughter needs some help. . . . And so, because of that, she's not requesting placement. She's prepared to submit this afternoon." These representations indicate mother and her counsel had discussed the choice of submission prior to the hearing.

In the Department's Acceptance of Transfer Report, the social worker reported that she had spoken with mother on May 7, 2013. Although mother denied causing minor's black eye and swollen lip, mother again admitted that she had attempted to slap L.P. and she had scratched L.P.'s arms. As to minor's other injuries, mother believed minor might have been "jumped into" a gang and beaten up. "[M]other stated she did not want to have the case . . . continued or request a trial to contest the petition because she is more

18

interested in getting help for [her daughter] to address her substance abuse and receive therapy to address previous suicide concerns."

At the disposition hearing on June 7, 2013 in Santa Clara County, mother's recently appointed counsel stated: "I [have] reviewed the disposition report with the mother. We are in agreement with it. I appreciate the Department working with the mother in striking the domestic violence support group. She is fully intending to do the case plan. She understands there's dysfunction. She does hope that her child will come home. [¶] She didn't necessarily agree with the way jurisdiction was taken in Yuba County; however, she understands why her daughter is not coming home today."

We conclude that the totality of circumstances reflect that mother's submission at the jurisdiction hearing represents a voluntary and intelligent choice among the alternative courses of action open to her. Mother was represented by counsel, who we presume was competent and fully advised her of her rights and likely consequences of submitting on the social worker's report. (Cf. *People v. Barrett*, *supra*, 54 Cal.4th at p. 1105; *Conservatorship of John L.*, *supra*, 48 Cal.4th at pp. 151-152, 156-157; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.) Mother's statements and the statements of her counsel indicate that mother understood she had a right to contest the dependency petition but elected not to because she wanted her daughter to receive needed help and she did not want minor to return to her care at that time.

Another relevant consideration is that, at the jurisdiction hearing, mother was faced with her daughter's report of physical abuse and photographs of the reported injuries and her own prior admissions. Given the evidence, it is unlikely that mother would have avoided dependency jurisdiction by contesting the petition. Under the circumstances, mother may have wanted to avoid testifying under penalty of perjury and being subjected to cross-examination.

19

We conclude that mother's voluntary and intelligent waiver of known procedural due process rights surrendered by submission of the jurisdictional determination may be properly inferred from the record without any showing of specific advisements and waivers. (Cf. *Conservatorship of John L.*, *supra*, 48 Cal.4th at p. 153 ["In a passage that speaks to the situation here, *Moore* emphasized the significance of a conservatee's representation by counsel in determining the validity of the conservatee's waiver of a hearing or trial: ' "When counsel is present [in a conservatorship proceeding], a [conservatee's] voluntary and intelligent waiver of known rights may properly be inferred from the record, without a specific on-the-record showing as to each right." ' [Citation.]"]; *Conservatorship of Chambers* (1977) 71 Cal.App.3d 277, 287 ["When counsel is present, a voluntary and intelligent waiver of known rights may properly be inferred from the record, without a specific on-the-record showing as to each right"].)

d. *No Structural Error*

Mother asserts that the lack of advisements and waivers constituted unconstitutional structural error not subject to review for harmlessness.

In *James F.*, *supra*, 42 Cal.4th 901, the Supreme Court accepted the parties' concession that "the procedures used in this case for appointment of the guardian ad litem did not comport with due process." (*Id*. at p. 911.) The court framed the issue as "whether a juvenile court's error in the procedure used to appoint a guardian ad litem always requires reversal or instead is subject to harmless error analysis." (*Ibid*., fn. omitted.) Unlike *James F.*, we have not found that the procedural irregularity in the mother's submission violated due process.

Moreover, few federal constitutional errors trigger automatic reversal. "[The United States Supreme Court has] repeatedly recognized that the commission of a constitutional error at trial alone does not entitle a defendant to automatic reversal. Instead, ' "most constitutional errors can be harmless." ' *Neder v. United States*, 527 U.S.

20

1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). ' "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." ' 527 U.S., at 8, 119 S.Ct. 1827 (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Only in rare cases has [the] Court held that an error is structural, and thus requires automatic reversal. In such cases, the error 'necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' *Neder*, *supra*, at 9, 119 S.Ct. 1827 (emphasis deleted)." (*Washington v. Recuenco* (2006) 548 U.S. 212, 218-219 [126 S.Ct. 2546].)

As the California Supreme Court explained in *James F.,* "Structural defects requiring automatic reversal of a criminal conviction typically involve basic protections without which ' "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." ' [Citations.] These include total deprivation of the right to counsel, denial of the right of self-representation, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, and denial of the right to a public trial. (*Arizona v. Fulminante*, *supra*, at p. 310, 111 S.Ct. 1246.)" (*Id.* at p. 914.) As the court observed, denial of a criminal defendant's Sixth Amendment right to choice of counsel also qualifies as a "structural error" not subject to harmless-error analysis. (See *ibid.*; see also *U.S. v. Gonzalez-Lopez* (2006) 548 U.S. 140, 148-152 [126 S.Ct. 2557].) Federal constitutional errors that are per se reversible "are 'structural defect[s] affecting the framework within which the trial proceeds' so that they 'defy analysis by "harmless-error" standards' and can never be harmless (*id.* at pp. 309–310, 111 S.Ct. 1246)." (*James F.*, *supra*, 42 Cal.4th at p. 914.)

21

In *James F*., the California Supreme Court questioned "whether the structural error doctrine that has been established for certain errors in criminal proceedings should be imported wholesale, or unthinkingly, into the quite different context of dependency cases. (See *In re Celine R., supra,* 31 Cal.4th at pp. 58–59 [rejecting analogy to criminal cases and applying harmless error analysis to improper joint representation of children in dependency case]; *In re Sade C.* (1996) 13 Cal.4th 952, 991 [stating that criminal defendants and parents in dependency proceedings 'are *not* similarly situated'].)" (*James F*., *supra*, 42 Cal.4th at pp. 915-916.) The court ultimately held that "a juvenile court's error in the process used for appointment of a guardian ad litem for a parent in a dependency proceeding is a form of trial error that is amenable to harmless error analysis." (*Id*. at pp. 918-919.)

The bottom line is that mother has not established that the court's failure to advise her of her hearing rights and obtain express parental waivers of those rights was federal constitutional error, much less structural constitutional error. Any failure by the court to comply with rules 5.534(k)(1) and 5.682 is amenable to harmless error analysis.

4. *Violation of Court Rules*

While we have found that the court rules requiring judicial advisement and findings regarding waiver and submission (rules 5.534(k)(1), 5.682) are not constitutionally compelled, we do not doubt that the requirements effectuate important judicial policies of ensuring that parents are fully aware of their rights and make informed decisions and minimizing the potential for error by requiring explicit advisements and findings. In the absence of any federal constitutional error, however, our review of noncompliance with those court rules is governed by California's Constitution, which "prohibits a court from setting aside a judgment unless the error has resulted in a

22

'miscarriage of justice.' (Cal. Const., art. VI, § 13.)"[6] (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60 (*Celine R.*).) The California Supreme Court has "interpreted that [constitutional] language as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error. (*People v. Watson* (1956) 46 Cal.2d 818, 836 . . . .)" (*Ibid.*) Mere possibility of a more favorable result is not enough. (*People v. Watson* (1956) 46 Cal.2d at p. 837.) The *Watson* standard of review applies to both criminal and civil cases (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801) and is applicable in dependency cases.[7] (*Celine R.*, *supra*, 31 Cal.4th at p. 60.)

As previously discussed, the record reflects that, before the jurisdiction hearing, mother admitted to the social worker that she had tried to slap her daughter and had scratched her and that minor had no injuries before they argued. Mother told the social worker that she could not control minor and she did not want minor returned to her care under those conditions and without services in place. The record further indicates that,

---

[6] Article VI, section 13 of the California Constitution provides in pertinent part: "No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

[7] In *Celine R.*, *supra*, 31 Cal.4th 45, a single appointed counsel represented three children, two siblings and a half sister, who had been declared dependents of the juvenile court. (*Id.* at pp. 49-50, 55.) On appeal from orders terminating parental rights, the children argued that the court should have appointed separate counsel for the half-sister and another counsel for the full siblings when their trial counsel expressed concern about representing all three at the section 366.26 hearing. (*Id.* at p. 55.) Citing a dependency case and criminal cases, "the children argue[d] that harmless error analysis [was] inappropriate in cases of improper joint representation" in a dependency case. (*Id.* at p. 58.) The Supreme Court found the analogy to criminal cases inapt. (*Ibid.*) It held that, in a dependency proceeding, "[a] court should set aside a judgment due to error in not appointing separate counsel for a child or relieving conflicted counsel only if it finds a reasonable probability the outcome would have been different but for the error." (*Id.* at p. 60.)

at the jurisdictional hearing, mother submitted the matter for decision based upon the social worker's report because she wanted to secure services for minor and she did not want minor placed in her care at that time. The appellate record does not demonstrate that mother would have obtained a more favorable result had the court provided advisements regarding hearing rights and made any requisite findings regarding waiver and submission after appropriate inquiry.

B. *Visitation*

Mother contends that the Yuba County juvenile court erred by ordering visitation dependent upon minor's request or assent. We asked the parties to discuss in supplemental briefing whether the dispositional order providing for visitation superseded prior visitation orders and renders them moot. The answer is clearly yes.

As the United States Supreme Court long ago stated, "[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (*Mills v. Green* (1895) 159 U.S. 651, 653 [16 S.Ct. 132]; see *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132-133.) The Santa Clara County juvenile court in its transfer-in and dispositional orders provided for supervised visitation between minor and mother and each of those visitation orders superseded prior visitation orders. Thus, the Santa Clara County juvenile court's visitation orders rendered any relief from past visitation orders of the Yuba County Superior Court unnecessary or ineffectual. (See *Paul v. Milk Depots, Inc.*, *supra*, 62 Cal.2d at p. 133.)

Moreover, it appears from the record that, at the continued detention hearing on March 27, 2013, mother, through counsel, affirmatively acquiesced to the Yuba County juvenile court's prior order providing for visitation as arranged by the social worker at

24

L.P.'s request. Mother's counsel said, "That's fine, Judge." Although father requested a visit with L.P. at the time of the jurisdiction hearing, mother did not.

Mother now argues: "Since for the first three months of this case, the minor was given the ultimate say over whether she visited her mother, the minor's sense of entitlement appears to have continued over into the reunification period in Santa Clara County. Therefore, the Yuba County court's error must not be considered moot."[8] Post-transfer problems with visitation, which necessarily occurred under the superseding visitation orders issued by the Santa Clara County Superior Court, do not demonstrate that effectual relief may be afforded to mother with respect to the earlier visitation order being challenged. If mother was experiencing problems with visitation after the transfer of the dependency case to Santa Clara County, her recourse was with the juvenile court in this county.

Mother contends that the visitation order of the Yuba County juvenile court "impacted [her] ability to reunify with L.P. during the first three months of this dependency action resulting in prejudice to her." She maintains that this court should extend the period of reunification by three months to compensate her for the failure of the Yuba County juvenile court to mandate visitation between minor and her. In support of this demand, she cites *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415 (*Tracy J.*)

---

[8]  In support of this assertion, counsel has asked this court to accept her declaration concerning post-transfer problems with visitation under Code of Civil Procedure section 909. The authority conferred upon appellate courts to take evidence and make findings of fact on appeal under Code of Civil Procedure section 909 and rule 8.252 has been narrowly construed and should be exercised sparingly. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 405, 408, fn. 9; *In re Elise K.* (1982) 33 Cal.3d 138, 149 (conc. opn. of Bird, C.J.); Advisory Com. com., 23, Pt. 3 West's Ann. Court Rules (2006 ed.) foll. Rule 8.252, p. 78.) We discern no exceptional circumstances warranting use of this power and decline counsel's request.

and *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774 (*Elizabeth R.*). Neither case supports her argument.

In both those cases, unlike this case, the court terminated reunification services and set the dependency case for a section 366.26 hearing. Under statute, juvenile courts cannot make such orders at a review hearing absent adequate proof that reasonable reunification services were provided. (See §§ 361.5, subds. (a)(3) & (a)(4), 366.21, subds. (e), (f), (g). 366.22, subd. (b); see also *In re Alvin R.* (2003) 108 Cal.App.4th 962, 975.)

In *Tracy J.*, the parents sought writ review of juvenile court orders terminating family reunification services and setting a section 366.26 hearing. (*Tracy J.*, *supra*, 202 Cal.App.4th at p. 1419.) The mother argued that she was not offered or provided reasonable family reunification services and the juvenile court abused its discretion in not extending the reunification period. (*Id.* at p. 1423.) The reviewing court concluded that "the parents, who were developmentally disabled, did not receive reasonable family reunification services" (*id*. at p. 1419) and granted writ relief. (*Id*. at pp. 1428-1429.)

In *Elizabeth R.*, the issue was "whether the juvenile court was compelled by law to terminate reunification services and order a [section] 366.26 hearing [at the 18-month review hearing] when a parent, although hospitalized for treatment of her mental illness for most of the reunification period, had substantially complied with the reunification plan." (*Elizabeth R.*, *supra*, 35 Cal.App.4th at p. 1787.) The court determined that the juvenile court had "discretion to accommodate the special needs of the family of the mentally ill in the unusual circumstances presented by this case." (*Ibid*.)

The Legislature has established a comprehensive statutory framework governing provision of reunification services and extension of the reunification period. (See § 361.5; see also §§ 366.21, 366.22, 366.25.) Mother has not provided any authority showing that judicial extension of the reunification period is a proper remedy for an

26

erroneous visitation order issued at an initial, pre-disposition hearing in a dependency case.

Here, the challenged visitation order has been superseded and the propriety of the order is now moot. If mother desired relief from it, her remedy was to seek timely review by writ petition.

*Disposition*

The June 7, 2013 dispositional orders are affirmed.


_____

ELIA, Acting P. J.


WE CONCUR:



_____

MIHARA, J.



_____

GROVER, J.


27